UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DZEVAD DURAKOVIC,

                  Plaintiff,

v.                                          3:17-CV-0894
                                          (TJM/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

APPEARANCES:                          OF COUNSEL:

COUGHLIN, GERHART LAW FIRM       SCOT G. MILLER, ESQ.
  Counsel for Plaintiff
P.O. Box 2039
99 Corporate Dr.
Binghamton, NY 13902-2039

U.S. SOCIAL SECURITY ADMIN.        SERGI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

      This matter was referred for report and recommendation by the Honorable Judge

Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b)

and Local Rule 72.3(d).  (Dkt. No. 7.)  This case has proceeded in accordance with

General Order 18.

      Currently before the Court, in this Social Security action filed by Dzevad

Durakovic ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part and denied in part, and Defendant's motion be granted in part and denied in part.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1969.  (T. 98.)  He completed high school in Bosnia.  (T. 216.)  Generally, Plaintiff's alleged disability consists of back injury, heart condition, depression, and diverticulitis.  (T. 215.)  His alleged disability onset date is October 12, 2013.  (T. 98.)  His date last insured is December 31, 2014.  (*Id.*)  He previously worked in manufacturing.  (T. 216.)

### B.     Procedural History

On January 8, 2014, Plaintiff applied for a period of Disability Insurance Benefits under Title II of the Social Security Act.  (T. 98.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On January 27, 2016 and again on May 18, 2016, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke.  (T. 29-42, 43-63.)  On May 25, 2016, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-28.)  On June 27, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 14-23.)  First, the ALJ found Plaintiff met the insured status

requirements through December 31, 2014 and Plaintiff had not engaged in substantial

gainful activity since October 12, 2013.  (T. 14.)  Second, the ALJ found Plaintiff had the

severe impairments of coronary artery disease, status post bypass; degenerative disc

disease of the lumbar spine, status post-surgery; and a mental impairment.  (T. 14-15.)

Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals

one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T.

15.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to:

> lift/carry twenty pounds occasionally and ten pounds frequently; sit an hour
> at a time and eight hours in a workday; stand an hour at a time and eight
> hours in a workday; and walk an hour at a time and eight hours in a workday.
> He could continuously reach, handle, finger, feel, push and pull.  [Plaintiff]
> could frequently use foot controls; balance, stoop, kneel, crouch and crawl;
> and he could occasionally climb.  He did not have any environmental
> limitations.  [Plaintiff] retained the ability to understand and follow simple
> instructions and directions; perform simple tasks independently; maintain a
> schedule; and handle simple, repetitive, work-related stress, in that he was
> limited to making occasional decisions directly related to the performance
> of simple tasks in a position with consistent job duties that did not require
> him to supervise or manage the work of others.  [Plaintiff] needed to avoid
> work requiring more complex interaction or joint effort to achieve work goals,
> although he was able to tolerate superficial contact with the public.

(T. 18.)  Fifth, the ALJ determined Plaintiff was incapable of performing his past relevant

work; however, there were jobs that existed in significant numbers in the national

economy Plaintiff could perform.  (T. 21-22.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment

on the pleadings.  First, Plaintiff argues the ALJ engaged in improper "cherry picking" of

the opinion evidence.  (Dkt. No. 11 at 19-22 [Pl.'s Mem. of Law].)  Second, Plaintiff

argues the ALJ improperly relied upon the opinion of E. Selesner, who the ALJ believed

to be a psychological consultant despite the lack of evidence thereof. (*Id.* at 22-23.) Third, and lastly, Plaintiff argues the ALJ failed to satisfy the Commissioner's burden at step five of the sequential evaluation process. (*Id.* at 23-26.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ reasonably weighed the opinion evidence. (Dkt. No. 12 at 9-14 [Def.'s Mem. of Law].) Second, Defendant argues Dr. Selesner was a State agency psychological consultant. (*Id.* at 14-16.) Third, and lastly, Defendant argues the ALJ reasonably relied on the vocational expert's testimony. (*Id.* at 16-18.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla,"
and has been defined as "such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.
1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational
interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v.
Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial
evidence, a reviewing court considers the whole record, examining evidence from both
sides, because an analysis of the substantiality of the evidence must also include that
which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be
sustained "even where substantial evidence may support the plaintiff's position and
despite that the court's independent analysis of the evidence may differ from the
[Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In
other words, this Court must afford the Commissioner's determination considerable
deference, and may not substitute "its own judgment for that of the [Commissioner],
even if it might justifiably have reached a different result upon a *de novo* review."
*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine
whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §
404.1520. The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  The ALJ's Weighing of the Medical Opinion Evidence and RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his]

limitations."  20 C.F.R. § 404.1545(a)(1)[1].  The ALJ is responsible for assessing

Plaintiff's RFC based on a review of relevant medical and non-medical evidence,

including any statement about what Plaintiff can still do, provided by any medical

sources.  *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c).

The opinion of a treating source will be given controlling weight if it "is well

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §

404.1527(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

---

[1]      Effective March 27, 2017, many of the Regulations cited herein have been amended, as
have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new
Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier
Regulations and SSRs.

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv).  The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion.  *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received his primary care from various providers at United Health Services ("UHS").  Plaintiff's primary care provider with UHS, David Li, D.O., completed a medical source statement on April 27, 2015.  (T. 957-962.)  Dr. Li indicated Plaintiff could lift/carry up to ten pounds continuously; 11 to 20 pounds occasionally and frequently; and never over 21 pounds.  (T. 957.)  Dr. Li opined Plaintiff could sit for an hour at a time, stand for an hour at a time, and walk for an hour at a time.  (T. 958.)  He opined Plaintiff could sit for eight hours total, stand for eight hours total, and walk for eight hours total.  (*Id.*)  The doctor wrote Plaintiff needed to alternate between sitting and standing.  (*Id.*)  Dr. Li opined Plaintiff could continuously use his hands and frequently use his feet for operation of foot controls.  (T. 959.)  Dr. Li indicated Plaintiff could occasionally climb stairs, ramps, ladders, or scaffolds.  (T. 960.)  He further indicated Plaintiff could frequently: balance; stoop; kneel; crouch; and crawl.  (*Id.*)  Dr. Li opined Plaintiff had no limitations in hearing or vision, and no environmental limitations. (T. 960-961.)  The form completed by Dr. Li stated that the limitations provided were

assumed to be the doctor's opinion "regarding current limitations only." (T. 962.) Dr. Li did not complete the section of the form asking if he had sufficient information to form an opinion within a reasonable degree of medical probability as to past limitations, and on what date the limitations were found to be first present. (*Id.*) When asked if the limitations provided lasted, or will last for 12 consecutive months, Dr. Li answered "yes." (*Id.*)

A treatment notation dated July 16, 2014, referenced a "form," not found in the record, completed by Dr. Li in which the doctor opined Plaintiff could work full time. (T. 898.) Dr. Li stated in his July 2014 treatment notation that he advised Plaintiff he was "physically active and [could] work." (T. 902.) Dr. Li stated Plaintiff's only work restriction was "no exertion/lifting more [than] 10lbs." (*Id.*) Dr. Li stated he encouraged Plaintiff to find a job and that he could not "lie about [his] assessment." (*Id.*) The doctor stated Plaintiff's back pain and coronary artery bypass grafting ("CABG") were not a reason for him not to work. (*Id.*) He noted Plaintiff was able to walk to all of his appointments, and able to function and perform all of his activities of daily living. (*Id.*)

The record also contains a physical examination and medical source statement provided by consultative examiner, Justin Magurno, M.D. dated May 6, 2014. (T. 704-708.) Based on her examination, Dr. Magurno opined Plaintiff should perform "no more than mild levels of physical exertion" and Plaintiff had "marked limitation for bending and squatting." (T. 708.)

The ALJ adopted Dr. Li's April 2015 opinion. (T. 19.) Indeed, the ALJ's physical RFC determination mirrors Dr. Li's opined limitations. The ALJ reasoned Dr. Li was Plaintiff's treating doctor and he treated Plaintiff for the entire period in question. (*Id.*)

The ALJ noted Dr. Li regularly advised Plaintiff to exercise which was consistent with his opinion; however, the doctor also noted Plaintiff needed to alternate between sitting and standing.  (*Id.*)  The ALJ noted Dr. Li was familiar with Plaintiff's impairments and his opinion was "consistent with [Plaintiff's] successful back treatment and heart treatment." (*Id.*)

The ALJ afforded Dr. Magurno's opinion "weight."  (T. 19.)  However, the ALJ did not adopt all of Dr. Magurno's opinion.  The ALJ noted Dr. Magurno's opinion was based on findings from her examination which had "no basis in the record."  (*Id.*) Specifically, the ALJ stated Plaintiff's slow gait and limited grip strength had no "basis in fact."  (*Id.*)

Plaintiff asserts the ALJ erred in affording great weight to treating physician Dr. Li because the limitations provided in the form only applied to April 2015, after Plaintiff's date last insured, and the form did not provide limitations relevant to the time period of the claim.  (Dkt. No. 11 at 19-21 [Pl.'s Mem. of Law].)  Plaintiff argues the ALJ failed to discuss or consider Dr. Li's July 2014 statement that Plaintiff was limited to no exertion/lifting more than 10 pounds, which would essentially limit Plaintiff to sedentary work.  (*Id.* at 20.)[2]

To be sure, a medical opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period.  *See Williams v. Colvin*, 98 F. Supp. 3d 614, 632 (W.D.N.Y. 2015) (the ALJ was not required to consider medical opinions outside of the relevant time period)*; McNally v. Comm'r of Soc. Sec.,* No. 5:14-CV-00076, 2015 WL 3621437, at *13

---

[2]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. § 404.1567(a).

(N.D.N.Y. June 9, 2015) (ALJ properly gave little weight to opinion of consultative examiner that was prepared more than eight years after the date last insured); *Shook v. Comm'r of Soc. Sec.,* No. 12-CV-185, 2013 WL 1213123, at *6 (N.D.N.Y. Jan. 25, 2013), *report and recommendation adopted,* No. 1:12-CV-185, 2013 WL 1222008 (N.D.N.Y. Mar. 25, 2013) (doctor's opinion written more than two and a half years after date last insured did not relate to relevant time period); *Gill v. Astrue*, No. 1:10-CV-985, 2011 WL 4352410, at *12 (N.D.N.Y. Sept. 15, 2011), *report and recommendation adopted,* No. 1:10-CV-985, 2011 WL 4352719 (N.D.N.Y. Sept. 15, 2011) (treating source report completed two years after date last insured did not address plaintiff's condition during the relevant time period).

However, the fact that Dr. Li's opinion was prepared after the date last insured does not, without more, provide a basis for disregarding his opinion.  *Brown v. Astrue*, 4 F. Supp. 3d 390, 399 (N.D.N.Y. 2012).  "Medical opinions given after the date that [plaintiff's] insured status expired are taken into consideration if such opinions are relevant to [plaintiff's] condition prior to that date.  The expiration date should not act as a cutoff with regard to the reports considered on this specific issue."  *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003).  While a physician's opinion can be too temporally remote from the date of last insured and excluded as a result, Dr. Li's opinion was issued only four months after the date last insured.

"[E]vidence bearing upon an applicant's condition subsequent to the [date last insured] is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have

10

imposed limitations as of the earning requirement date." *Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 44 (2d Cir. 1991) (citations omitted).  Therefore, Dr. Li's opinion was not so chronologically distant from Plaintiff's date last insured to render it irrelevant.  In addition, as stated by the ALJ, the longitudinal record of Plaintiff's physical impairments remained consistent and Dr. Li provided care for the entire period in question.

Further, the ALJ did not err in failing to specifically address Dr. Li's 2014 statement.  Dr. Li stated in a 2014 treatment notation, Plaintiff could work with a restriction to "no exertion/lifting more than 10 lbs."  (T. 902.)  Although the ALJ did not specifically mention Dr. Li's 2014 notation,  "[a]n ALJ  is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10-CV-1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)).  Here, the ALJ clearly relied on Dr. Li's more detailed 2015 medical source statement.  The ALJ's provided sufficient reasoning to support her determination to afford the 2015 statement great weight and substantial evidence in the record supported the ALJ's decision.

Plaintiff also asserts the ALJ improperly evaluated the opinion of Dr. Magurno. (Dkt. No. 11 at 21 [Pl.'s Mem. of Law].)  First, an ALJ is not required to accept the opinion of a consultative examiner.  *Pellam v. Astrue*, 508 F. App'x 87, 89-90 (2d Cir. 2013) ("There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations, and substantial evidence supported the

ALJ's decision not to adopt many of [the consultative examiner's] conclusions."). Second, the ALJ properly weighed Dr. Magurno's opinion. The ALJ reviewed Dr. Magurno's opinion; however, the ALJ ultimately determined to afford greater weight to the treating source, Dr. Li. (T. 20.) There is no indication from the ALJ's summarization of Dr. Magurno's opinion that she misstated or misread the record. Further, the ALJ provided specific evidence in the record to support her determination to afford Dr. Magurno's opinion less weight than Dr. Li's. Therefore, the ALJ did not err in her assessment of Dr. Magurno's opinion.

Overall, the ALJ's physical RFC determination was supported by Dr. Li's 2015 medical opinion. The ALJ properly assessed Dr. Li's opinion and relied on his 2015 opinion in formulating her physical RFC determination. Although the 2015 opinion was provided approximately four months after Plaintiff's date last insured, Dr. Li provided Plaintiff care during the entire period in question, the opinion was consistent with the medical evidence in the record indicating Plaintiff's physical impairments remained consistent from the relevant time period through the date of the opinion, and the opinion was not so remote as to render it useless. Therefore it is recommended that the ALJ's physical RFC be upheld.

Concerning Plaintiff's mental abilities, the record contains opinions provided by consultative examiner Alan Dubro, Ph.D.; treating provider, Andrea Barbis, LCSW-R; and non-examining State agency medical consultant E. Selesner.

On May 6, 2014, Dr. Dubro examined Plaintiff and provided a medical source statement. (T. 696-701.) Dr. Dubro opined Plaintiff could understand directions, but had a "mild" difficulty in his ability to attend, remember, and follow directions. (T. 700.)

He opined Plaintiff's attention and concentration were moderately impaired and he would have moderate difficulty in learning new tasks. (*Id.*) Dr. Dubro opined Plaintiff had "moderate" difficulty in his ability to perform daily tasks independently and on a regular basis. (*Id.*) The doctor opined Plaintiff had "marked" difficulty in his ability to perform complex tasks independently and on a regular basis. (*Id.*) Dr. Dubro opined Plaintiff had moderate difficulty in his ability to interact with others and was capable of making day-to-day decisions. (*Id.*) Dr. Dubro opined Plaintiff "would display marked difficulty in his ability to regularly attend to a routine and maintain a schedule." (*Id.*)

On September 10, 2014, Ms. Barbis completed a medical source statement. (T. 714-716.) She opined Plaintiff had marked limitations interacting with the public, and responding appropriately to usual work situation and to changes in a routine work setting. (T. 716.)[3] She opined he had moderate limitations interacting appropriately with supervisors and co-workers. (*Id.*)[4] Ms. Barbis stated she just began to work with Plaintiff, but he was experiencing symptoms of PTSD that were "likely to interfere [with] interpersonal relationships or change adaption." (*Id.*)

Ms. Barbis completed another medical source statement on April 27, 2015. (T. 953-955.) She indicated Plaintiff had no limitation in his ability to understand and remember simple instructions or carry out simple instructions. (T. 953.) Ms. Barbis opined Plaintiff had moderate limitations in his ability to: make judgments on simple work-related decisions; understand and remember complex instructions; and carry out

---

[3]     Marked is defined as a "serious limitation in this area. There is a substantial loss in the ability to effectively function." (T. 714.)

[4]     Moderate is defined as "more than a slight limitations in this area but the individual is still able to function satisfactorily." (T. 714.)

complex instructions.  (*Id.*)  She opined Plaintiff had a marked limitation in his ability to

make judgments on complex work-related decisions.  (*Id.*)  She wrote that Plaintiff's

PTSD was unpredictable and it was "difficult to [] judge these factors."  (*Id.*)  Ms. Barbis

opined Plaintiff had moderate limitations in his ability to: interact appropriately with the

public, supervisors, co-workers and respond appropriately to usual work situations and

to changes in a routine work setting.  (T. 954.)  Ms. Barbis wrote that Plaintiff's

symptoms could "vacillate."  (*Id.*)

   On May 15, 2014, Dr. Selesner reviewed the record and completed a disability

determination.  (T. 89-96.)  Dr. Selesner stated Plaintiff had moderate limitations in

activities of daily living, maintaining social functioning, and maintaining concentration,

persistence or pace.  (T. 89-90.)

   In weighing the medical opinion evidence in the record, the ALJ afforded "less

weight" to Dr. Dubro's opinion.  (T. 20.)  The ALJ reasoned Dr. Dubro's opinion

contrasted with Plaintiff's own statements that he no longer needed mental health

services and wanted a reduction in his medication, and inconsistent with Plaintiff's

activities of daily living.  (*Id.*)  The ALJ further reasoned Dr. Dubro's statement was

inconsistent with the opinion of Dr. Selesner.  (*Id.*)  The ALJ afforded Ms. Barbis's

statement "less weight."  (*Id.*)  The ALJ reasoned Ms. Barbis just began treating Plaintiff

when she completed her 2014 statement and therefore did not have a treating

relationship with him.  (*Id.*)  The ALJ reasoned Ms. Barbis's 2015 statement was issued

after Plaintiff's date last insured and although Plaintiff's symptoms may have worsened,

it was after the relevant time period.  (*Id.*)  The ALJ further stated she afforded "great

weight" to Dr. Selesner's opinion that Plaintiff was capable of following supervision, but

should have limited contact with co-workers, and was capable of performing simple tasks.  (T. 19 referring to T. 94.)

Plaintiff asserts the ALJ erred in assessing the medical opinion evidence in the record pertaining to Plaintiff's mental impairment.  Plaintiff argues the ALJ improperly discounted the opinion of Dr. Dubro because the ALJ failed to specify which of Plaintiff's activities of daily living were inconsistent with the opinion.  (Dkt. No. 11 at 21-22.) Plaintiff's argument is without merit.  In her assessment of Dr. Dubro's opinion the ALJ stated they were, in part, inconsistent with Plaintiff's activities of daily living "as described above."  (T. 20.)  In her determination, the ALJ noted Plaintiff admitted to driving, going out alone, shopping, attending appointments, and using a computer.  (T. 16.)  Dr. Li noted Plaintiff could perform all of his activities of daily living.  (T. 902.) Therefore, the ALJ's overall analysis provides sufficient analysis for a court to "fathom the ALJ's rationale in relation to evidence in the record. . . ." *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013.)

Plaintiff appears to argue the ALJ erred in her assessment of Ms. Barbis's opinion because she applied a "different approach" in assessing her opinion than Dr. Li's opinion.  (Dkt. No. 11 at 20 [Pl.'s Mem. of Law].)  However, the ALJ properly assessed both opinions.  Although Dr. Li's opinion, like Ms. Barbis's, was dated after Plaintiff's date last insured, the ALJ ultimately concluded the limitations provided by Dr. Li were consistent with the longitudinal record and treatment history.  (T. 19.)  In contrast, the ALJ concluded Ms. Barbis's statement was provided after Plaintiff's date last insured and, unlike Plaintiff's physical impairments, he only reported worsening symptoms after the relevant time period.  (T. 20.)  The ALJ did not commit legal error in

taking into consideration the timing of the opinions and how the opinion related to the longitudinal record.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  Further, as outlined herein, the ALJ's mental RFC determination is not wholly inconsistent with Ms. Barbis's opinion.

Plaintiff asserts there is no indication in the record that Dr. Selesner was a psychologist.  (Dkt. No. 11 at 20-21 [Pl.'s Mem. of Law].)  Plaintiff's assertion is incorrect.  The record refers to Dr. Selesner's specialty code as "38."  (T. 90, 96, 98.) Specialty code 38 corresponds to the medical specialty "Psychology" according to the Social Security Administration's Program Operations Manual System ("POMS").  POMS DI 24501.004B.  Therefore, Dr. Selesner was a psychologist.

Plaintiff further asserts the portion of the record the ALJ attributed to Dr. Selesner was actually signed by a single decision maker ("SDM").  (Dkt. No. 11 at 22, 22-23.)  To be sure, the portion of the record cited by the ALJ, which she contributed to Dr. Selesner, appears to have been completed by SDM D. Yadlosky.  (T. 94-95.)

"SDMs are non-physician disability examiners who 'may make the initial disability determination in most cases without requiring the signature of a medical consultant.' " *Lozama v. Colvin*, No. 1:13-CV-0020, 2016 WL 1259411, at *5 (N.D.N.Y. Mar. 30, 2016) (quoting *Hart v. Astrue*, 32 F.Supp.3d 227, 237 (N.D.N.Y. 2012)).  Because SDMs are not medical professionals, courts have concluded that an SDM's RFC assessment is "entitled to no weight as a medical opinion." *See, e.g.*, *Buono v. Colvin*, No. 14-CV-2388, 2015 WL 4390645, at *2 (E.D.N.Y. July 15, 2015); *Box v. Colvin*, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014); *Kociuba v. Comm'r of Soc. Sec.*, No. 5:16-CY-0064, 2017 WL

2210511, at *7 (N.D.N.Y. May 19, 2017) (citing *Robles v. Comm'r of Soc. Sec.*, No. 5:15-CY-1359, 2016 WL 7048709, at *5 (N.D.N.Y. Dec. 5, 2016)).  It is thus legal error to weigh an SDM's opinion as if he or she were a medical professional.  *See, e.g., Box*, 3 F. Supp. 3d at 46.  Here, any error the ALJ may have made in affording weight to an opinion by a SDM was harmless error.

The ALJ's overall mental RFC determination was more restrictive than the assessment provided by Dr. Selesner and was supported by substantial evidence in the record, including Plaintiff's treating source, Ms. Barbis.  *Hart v. Astrue*, 32 F. Supp. 3d 227, 237 (N.D.N.Y. 2012) (ALJ's decision to afford weight to a SDM's assessment was harmless error because the ALJ adopted greater restrictions in the RFC determination and it was clear that "the ALJ would have reached the same conclusion even if she had assigned no evidentiary weight to the SDM's assessment.").

The ALJ would have reached her mental RFC determination even if she had assigned no weight to the opinion of Dr. Selesner, or the SDM.  The ALJ's mental RFC was supported by Ms. Barbis's opinion, Dr. Dubro's opinion, and other evidence in the record.  Ms. Barbis and Dr. Dubro both opined Plaintiff was capable of understanding, remembering, and carrying out simple tasks.  (T. 953, 700.)  The ALJ's mental RFC limited Plaintiff to occasional decision making and a position that did not require Plaintiff to supervise or manage others.  (T. 18.)  These limitations are consistent with Ms. Barbis's opinion Plaintiff had moderate limitations in: making work-related decisions; interacting with the public, supervisors, coworkers; and responding appropriately to changes in the work setting.  (T. 953-954.)  In addition, as noted by the ALJ, during the relevant time period, Plaintiff informed his psychiatric nurse practitioner his medication

was "good," he "felt better," and was getting out more.  (T. 675.)  He informed his provider in February 2014 that he no longer needed mental health care and requested a decrease in his medication.  (T. 660.)  At his initial mental health appointment on April 18, 2013, Plaintiff's concentration and insight were poor, and his judgment and attention were fair.  (T. 678.)  Plaintiff's mental status examination as subsequent appointments indicated Plaintiff's affect was appropriate, his thought process was organized, he had flashbacks, his thought content was reality based, his concentration/attention was good/fair, and his insight and judgment were good.  (T. 660-661, 664, 667, 670, 673.)[5] Therefore, any error the ALJ may have made in affording an opinion of a SDM weight would be harmless because even if the opinion was afforded no weight, there was still substantial evidence in the record to support ALJ's mental RFC determination.

Overall, the ALJ properly assessed the medical opinion and other opinion evidence in the record.  The ALJ's physical and mental RFC determinations were supported by substantial evidence.  Therefore, it is recommended that the ALJ's RFC determination be upheld.

### B.  The ALJ's Step Five Determination

Although the plaintiff has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five " 'to show there is other work that [the claimant] can perform.' "  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the

---

[5]      On July 5, 2013 and August 2, 2013, Plaintiff's insight and judgment were observed to be "fair."  (T. 673, 676.)

assumption[s] upon which the vocational expert based his opinion' [ ] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-1554 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  "[T]he crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d. Cir. 1984).

Plaintiff argues he is unable to communicate in English, the ALJ failed to make a finding as to whether or not he could read or write English, and the occupations provided by the VE would be precluded based on Plaintiff's inability to communicate in English.  (Dkt. No. 11 at 23-26 [Pl.'s Mem. of Law].)

Although the ALJ broadly discussed Plaintiff's ability to communicate in English, the ALJ failed to set forth with sufficient specificity whether or not Plaintiff was literate. A plaintiff's ability to communicate in English is assessed at step five under the vocational factor of education.  *See* 20 C.F.R. § 404.1564.  Education includes not only schooling, but literacy and the ability to communicate in English.  *Id.*  The SSA's Regulations define "illiteracy" as the "inability to read or write," while the "inability to

communicate in English" is a separate educational factor.  20 C.F.R. §§ 416.964(b)(1),

(b)(5).  The Regulations state, under "Inability to communicate in English":

> Because English is the dominant language of the country, it may be difficult
> for someone who doesn't *speak* and *understand* English to do a job,
> regardless of the amount of education the person may have in another
> language. Therefore, we consider a person's ability to communicate in
> English when we evaluate what work, if any, he or she can do. It generally
> doesn't matter what other language a person may be fluent in.

*Id.* at § 404.1564(b)(5) (emphasis added).

When asked at the hearing if he could read and write in English, Plaintiff

responded: "[n]ot all. I was learning before Russian, then Germany, German and now

after these two languages, I'm starting English, and I'm still not good at English."  (T.

59.)  When asked if he could follow written instructions, Plaintiff answered "no."  (T.

232.)  Regarding his ability to speak and understand English, Plaintiff stated he could

"talk somewhat of [English], to the point I can understand what people are saying."  (T.

233.)  When asked if he could follow spoken instruction, Plaintiff answered "yes."  (T.

232.)  Although medical providers noted difficulty communicating with Plaintiff due to his

thick Russian accent (T. 680), language barriers did not prevent Plaintiff and his

providers from engaging in talk therapy (T. 660-680, 927-932).  Also of note, Plaintiff

worked successfully as a laborer, despite communication barriers, from 1998 through

2002 and 2003 through 2009.  (T. 198-199, 216.)

Although the record contained sufficient information for the ALJ to make a

determination, she failed to do so with sufficient specificity.  It is unclear from the ALJ's

written decision, or from her hypothetical at the hearing, whether Plaintiff was literate

and/or whether Plaintiff could communicate in English.

At step five of her written decision, the ALJ concluded Plaintiff had at least a high school education in Bosnia and was able to "understand simple English."  (T. 21.)  In her hypothetical at the hearing, the ALJ stated Plaintiff had a "high school education in a foreign country" and could "speak and understand simple English commands."  (T. 37.)  The VE testified a hypothetical person with Plaintiff's vocational factors and RFC could perform the occupations of mail clerk (DOT 209.687-026), document preparer (DOT 249.587-018), and office helper (DOT 239.567-010).  (T. 38-39.)  At the hearing, Plaintiff's counsel asked the VE if someone with a "simple command of English" could perform the occupations provided.  (T. 41.)  The VE testified that the jobs presented "do not require constant interaction with either coworkers or the public; and primarily deal with, dealing with objects and not with people.  So, yes [. . . ]."  (*Id.*)

It is unclear from the ALJ's determination, or hypothetical at the hearing, what Plaintiff was capable of regarding his ability to read, write, speak, and understand English.  The VE's testimony adds further confusion because all of the occupations provided by the VE require a language level of 2.  (DOT 209.687-026, DOT 249.587-018, DOT 239.567-018.)  A language level of two requires the ability to read at a rate of 190-215 words per minute, write compound and complex sentences, and to speak clearly and distinctly.  DOT, App'x C, 1991 WL 699702.  To be sure, the VE testified that a person with a "simple command of English" could perform those occupations.  However, it is unclear what the ALJ, or counsel, meant by a "simple command of English."

Here, remand is recommended for the ALJ to make a specific determination regrading Plaintiff's ability to communicate in English, including whether or not Plaintiff

is illiterate, and whether there are jobs that exist in the national economy Plaintiff can perform.  The ALJ properly weighed the medical opinion evidence in the record and her physical and mental RFC determination was supported by substantial evidence in the record.  However, remand is recommended to clarify, at step five, whether there are jobs that exist in the national economy Plaintiff can perform given his education as a vocational factor.

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:       May 30, 2018

William B. Mitchell Carter
U.S. Magistrate Judge